460 P.2d 9

**STATE of Arizona, Appellee,**

**v.**

**Jack Earl DARBY, Appellant.**

**No. 1955.**

Supreme Court of Arizona.

In Division.

Oct. 20, 1969.

Rehearing Denied Nov. 18, 1969.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Lurie & Friedman, by Steven Friedman, Phoenix, for appellant.

HAYS, Justice.

Jack Darby was charged and convicted by a jury of robbery, a felony under A.R.S. § 13–641. He appeals his conviction contending the trial court erred in failing to suppress the in-court identification testimony of two witnesses who had identified the defendant at a "tainted" police lineup, and in refusing to give certain instructions requested by the defense.

About 2:00 a. m. on the morning of September 11, 1967, Darby and another subject, both of whom answered the descriptions of the two men who had minutes before robbed a coffee shop at Central and Osborn Avenues in Phoenix, were arrested and taken into custody at the corner of 3rd Ave. and Thomas Road by two Phoenix police officers. The officers heard brief descriptions of the suspects and their vehicle over the police radio.

Within an hour of the arrests, the police staged a lineup for the complaining witnesses who identified Darby and his co-defendant without hesitation.

The trial court granted the defense's pretrial motion to suppress testimony concerning this lineup on grounds that the procedure followed was inherently violative of the due process rights of the defendant. Although the identifications made at this lineup were positive and without reservation, the court found irregularities in the conduct of the proceeding. The defendant had not been advised of his right to have legal counsel present at the lineup, and he was shown wearing a dark blue denim cowboy shirt similar to that worn by one of the armed robbers, while the other four suspects in the lineup were dressed in white "T" shirts.

On a further motion to suppress *all* identification testimony, the trial court held a second hearing outside of the presence of the jury to decide whether any subsequent identification would be prejudicially tainted by the earlier lineup. On the basis of the examination of the witnesses by both counsel, Judge Strand ruled that testimony of subsequent identifications would not be withheld from the jury's consideration.

The defendant objected to the in-court identifications made by the complaining witnesses on the basis that the State had failed to show by "clear and convincing evidence" that these identifications were based upon observations of the suspect independent of the "tainted" lineup. The defense maintained that the testimony at the hearing shows that the lineup confrontation was so unnecessarily suggestive and conducive to irreparable mistaken identification so as to deny due process of law and to make it impossible for the prosecution to meet the "clear and convincing" test.

We first announced the clear and convincing evidence test in the opinion of State v. Dessureault, 104 Ariz. 380, 453 P.2d 951 (1969), wherein we set forth the effective procedure for handling challenged in-court identifications at the trial court level. For cases following Dessureault we

established the rule that if the proposed in-court identification is challenged, the trial court must immediately hold a hearing in the absence of the jury to determine from clear and convincing evidence whether the circumstances surrounding the pretrial identification were unduly suggestive or violative of our concepts of due process. If the trial judge concludes that the circumstances of the pretrial identification were unduly suggestive, then it is the prosecution's burden to satisfy the trial judge from "clear and convincing evidence" that the proposed in-court identification is not tainted by the prior identification.

The Dessureault decision was handed down a full year after the Darby trial, but the lower court wisely anticipated this Court's ruling. Guided by the United States Supreme Court's then very recent decisions in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, the trial judge properly ordered a hearing to determine the issue.

This Court is asked to review the findings of that hearing.

■ The determination of whether the proposed in-court identification is or is not tainted by a prior lineup at which the due process rights of the accused have been overreached, is a question of fact for the trial judge. His determination that the in-court identifications are based upon observations of the suspect other than the lineup, will not be disturbed on appeal unless there is clear and manifest error.

As established by the Supreme Court in the Wade case, supra, the proper test to be applied in these situations is that quoted in Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, "Whether granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." As

stated by the Wade majority on page 1940 of 87 S.Ct.:

"Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup."

■ We have scrutinized the record of that hearing and after independent application of the above standards we find that the evidence clearly and convincingly sustains the lower court's ruling.

The second contention of error concerns the trial court's refusal to give certain instructions requested by the defendant dealing with the issue of intent.

Darby's defense to the charge rested on the theory that before any money was taken he left the place where this robbery allegedly occurred and by his words and actions showed that he wanted nothing to do with whatever was going on in the coffeeshop. His theory of the case is that while he was being tried as a principal, he was charged only as an accessory to the crime and though the technical means of charging one as an aider or abettor have been abolished by the Arizona statutes, the intent necessary to show one guilty as an aider or abettor is an essential element of the offense. It is argued that the State had to prove that Jack Darby intended to assist or participate in the commission of the crime under the particular circumstances. Therefore, the defense maintains that the defendant was entitled to instructions on specific intent.

Defendant complains that the instructions given by the court do not properly raise the issue of this requisite element of the crime for the jury's consideration. We set out the instructions as given.

"No. 3. The following parts of the Arizona Statutes apply to this case:

Section 13–140, Arizona Revised Statutes. All persons concerned in the commission of a crime, whether they directly commit the act constituting the offense or aid and abet in its commission shall be prosecuted and tried as principals.

No. 4. Section 13–641, Arizona Revised Statutes: Robbery. Robbery is the feloneous taking of personal property in the possession of another from his person or immediate presence and against his will accomplished by means of force or fear.

No. 5. Intent necessary to be guilty as a principal. You are instructed that to find the defendant guilty as a principal to the act charged, you must find that at the time of the act committed the accused possessed a criminal intent. To constitute a crime there must be a combination of an act forbidden by law and an intent to do the act. Intent may be inferred from the defendant's voluntary commission of an act forbidden by law and it is not necessary that the defendant knew his act was a violation of the law."

The instructions which were requested but refused by the court are set forth as follows:

"No. 12. *Criminal intent necessary to make one an accomplice.* Merely assenting to or assisting in the commission of a crime without guilty knowledge or intent is not criminal, and a person so assenting to or aiding or assisting in the commission of the crime without guilty knowledge or intent in respect thereto is not an accomplice in the commission of such crime.

No. 13. *Specific intent.* In the case of certain crimes, it is necessary that the criminal act be accompanied by a specific or particular intent, without which the crime is not committed.

Thus, in the crime of robbery, a necessary fact to be proved is the existence in the mind of the defendant of the specific intent to feloneously take property from another person, and unless such intent to feloneously take property from another person so exists, that crime is not committed."

█ It is urged that the instructions as given were confusing, but we think that the instructions when read as a whole, are comprehensive and fair to the defendant. It is of course the rule that instructions must be read as a whole and not piecemeal, and if from an examination they are substantially free from error, an assignment predicated upon an isolated paragraph which, standing alone might be misleading, will be given no weight. State v. Evans, 88 Ariz. 364, 356 P.2d 1106 (1960); State v. George, 95 Ariz. 366, 390 P.2d 899 (1964).

The issue is whether the jury was misled on the question of criminal responsibility on the part of the defendant. When the court's three instructions as set out above, are read together, it is apparent that they do not allow a finding of guilt unless the appellant entertained the requisite intent. See State v. George, supra. The court's instructions clearly stated the law that all persons concerned in the commission of a crime shall be tried as principals. This along with the accompanying charges, instructed the jury that to return a verdict of guilty of the crime of robbery, they must find that Jack Darby, as a companion and driver of the car, intended that there be a felonious taking of personal property from the possession of another against their will. The defendant's requested instructions 12 and 13 add nothing to what had already been stated in the court's instructions as given.

A careful examination of the entire charge has convinced us that the jury was adequately and correctly advised of the

law governing the case. We find no error in the instructions.

Judgment of trial court affirmed.

STRUCKMEYER and McFARLAND, JJ., concur.